FILED
CLERK, U.S. DISTRICT COURT

MAY 28 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOHNNIE MOORE,                    )    NO. SA CV 08-4-GAF(E)
                                  )
                 Petitioner,      )
                                  )
      v.                          )    ORDER ADOPTING FINDINGS,
                                  )
JOHN MARSHALL, Warden,            )    CONCLUSIONS AND RECOMMENDATIONS
                                  )
                 Respondent.      )    OF UNITED STATES MAGISTRATE JUDGE
                                  )
_____ )

      Pursuant to 28 U.S.C. § 636, the Court has reviewed the

Petition, all of the records herein and the attached Report and

Recommendation of United States Magistrate Judge.  The Court approves

and adopts the Magistrate Judge's Report and Recommendation. *The court

notes that Haywood is no longer good law but that*

*it does not impact on this Court's disposition.*

      IT IS ORDERED that Judgment be entered denying and dismissing

the Petition with prejudice.

///

///

///

///

1     IT IS FURTHER ORDERED that the Clerk serve copies of this Order,

2 the Magistrate Judge's Report and Recommendation and the Judgment

3 herein by United States mail on Petitioner and counsel for

4 Respondent.

5

6     LET JUDGMENT BE ENTERED ACCORDINGLY.

7

8     DATED: _____ 5/27 _____ , 2008.

9

10

11

12                    GARY A. FEESS
            UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHNNIE MOORE, | NO. SA CV 08-4-GAF(E) |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION OF |
| JOHN MARSHALL, Warden, | UNITED STATES MAGISTRATE JUDGE |
| Respondent. | |

This Report and Recommendation is submitted to the Honorable Gary A. Feess, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

**PROCEEDINGS**

Petitioner filed a "Petition for Writ of Habeas Corpus By a Person in State Custody" on Jan. 2, 2008, accompanied by an attached Memorandum ("Pet. Mem."). Respondent filed an Answer on February 27, 2008. Petitioner filed a Traverse on April 9, 2008.

**BACKGROUND**

On a night in May of 1977, Petitioner entered the home of Bulmaro Amaya, purportedly on a mission of theft (see Opinion of the California Court of Appeal in People v. Moore, case number G005858, Respondent's Lodgment 2, pp. 2-4). Petitioner shot Mr. Amaya dead, and shot the Amaya's three-year-old son in the neck, rendering the boy paralyzed below the chest (id.). Petitioner was not apprehended until 1986, when authorities identified a fingerprint found at the Amaya residence as Petitioner's (id., p. 2). In 1987, a jury found Petitioner guilty of first degree murder, and found true the allegation that Petitioner used a firearm in the commission of the offense within the meaning of California Penal Code section 12022.5 (Petition, p. 2). Petitioner received a life sentence (id.; Respondent's Lodgment 1).

On June 14, 2006, Petitioner appeared before the California Board of Parole Hearings ("Board")[1] for a fourth subsequent parole hearing (Respondent's Lodgment 5). The Board denied parole for two years (Respondent's Lodgment 5, pp. 58-63).

Petitioner filed a habeas corpus petition in the Los Angeles County Superior Court, which that court denied in a reasoned order on January 24, 2007 (Respondent's Lodgments 6, 7). Petitioner filed habeas corpus petitions in the California Court of Appeal and the

---

[1]    On July 1, 2005, the California Board of Prison Terms was abolished and replaced by the California Board of Parole Hearings.  See Cal. Penal Code § 5075(a).

2



California Supreme Court, which those courts denied summarily
(Respondent's Lodgments 8, 9, 10, 11).

**THE HEARING AND DECISION**

**I.   The Hearing**

Petitioner appeared at the hearing on June 14, 2006, represented
by counsel.  Petitioner declined to discuss the commitment offense
(Respondent's Lodgment 5, pp. 9-10).  The presiding commissioner read
into the record a summary of the commitment offense from the October
2005 Board Report:

> The life crime occurred on 5/12/1977 sometime between the
> hours of 11:00 p.m. and 6:00 a.m. the following date.  The
> crime took place at the home of Mr. Amaya (phonetic) and his
> family in the city of Orange.  There did not appear to be
> any relationship between the victim and the prisoner.
> Mr. Moore entered the bedroom, and when Amaya awoke, Moore
> started shooting.  Moore struck Mr. Amaya and his three-
> year-old son Mario.  The shots killed Mr. Amaya and
> paralyzed Mario from the chest down.  The crime took place
> in 1977, and Moore was not arrested until nine years later
> in November of 1986.  Positive identification was made on a
> fingerprint found at the Amaya home by the Department of
> Justice through a new automated fingerprint system.  This
> type of ID did not - or was not available when the crime
> took place in 1977.

3



1  (id., pp. 11-12).

2

3      The presiding commissioner continued:

4

5          It should be noted that Moore was never charged with

6      any of the crimes against Mario Amaya and -- who was shot

7      and paralyzed, again, due to the statute of limitations

8      expiring.  Under the inmate's version it says that the crime

9      occurred when Moore was 19 years old.  The life crime was an

10     accident.  He did not enter the victim's home to kill, only

11     to burglarize the home.  He stated he did not think the

12     victim had died when he left the home; however, Moore does

13     admit shooting the victim and has a great deal of remorse

14     for both the victim and the paralyzed son.  There is a first

15     version contained in the Court of Appeals document going

16     down on page three, the last paragraph.  It says Moore

17     initially denied involvement in the killing.  He was driven

18     by the Amaya home and continued to maintain his innocence.

19     Only after the officers confronted him with the fingerprint

20     evidence did he offer an explanation.  He was driving

21     through Orange County on his way to Pasadena when four gun

22     toting pimps in a luxury car began to chase him.  He eluded

23     his pursuers and drove off the freeway needing to relieve

24     himself and desirous of obtaining gas money for his return

25     trip[.]  [H]e stopped at the Amaya home.  While urinating in

26     their yard, he noticed the screen had been removed and a

27     window broken.  He peered through the kitchen window and

28     then saw the front door was open.  He entered the home and



4

1    picked up a jewelry box and dropped it and ran out as soon

2    as he saw the gunshot victims.

3

4  (id., pp. 12-13).

5

6       In 1971 and again in 1975, Petitioner spent time in juvenile hall

7  for burglary (id., p. 14).  In 1997, Petitioner was committed to the

8  California Youth Authority ("CYA") for first-degree robbery (id.).

9  During that commitment, Petitioner failed to return from an authorized

10 absence and was charged with escape (id.).  According to Petitioner,

11 that incident did not prevent his discharge from CYA (id., pp. 14-15).

12 Petitioner was arrested for controlled substance offenses in 1982 and

13 1985, and for grand theft auto in 1986, but apparently was only

14 detained and released in those cases (id., p. 15).

15

16      Petitioner allegedly had three children, with whom he assertedly

17 stayed in contact (id., pp. 16-17).  Petitioner allegedly had been

18 employed in various construction jobs and as an auto mechanic, and had

19 worked for Coca-Cola during the Olympics (id., pp. 17-18).

20

21      Petitioner allegedly began using PCP after his mother's death

22 (id., p. 19).  Petitioner said he was drinking on the day of the

23 commitment offense, but said his alcohol use was infrequent,

24 "sociable," and involved "a couple of beers or something like that"

25 (id., pp. 20-21).  While incarcerated, Petitioner allegedly had

26 participated in AA and NA for a long time (id., pp. 34-35).

27 Petitioner said he had been in AA for seventeen years (id., p. 37).

28 Petitioner assertedly found the fourth step in the AA program the most

meaningful (id., p. 35).[2]  The Board asked Petitioner what he had done

with respect to the eighth step (id.).[3]  Petitioner said he had not

done anything with respect to step eight, and that the only step on

which he had concentrated was step four (id., pp. 35-36).  Petitioner

agreed that working on step eight might be important to Petitioner at

some point in time "because it completes the whole package" (id.,

p. 36).  Asked what specifically about step eight would be helpful to

Petitioner, Petitioner responded: "Like I said, I never covered that

step yet," adding that he was "going that way" (id.).  The Board

asked: "So you're not really familiar with what it [step eight] asks

you to do?" (id., p. 37).  Petitioner responded: "That's right."

(id.).  Asked whether Petitioner knew the steps, Petitioner said:

"Just the four." (id.).  Petitioner said he really enjoyed AA, and

would continue AA and NA if paroled, but indicated he had not

contacted anyone on the outside to determine what AA programs were

available in the area to which Petitioner wanted to be paroled (id.,

pp. 39-40).


    Petitioner had completed anger management and correspondence

bible courses (id., pp. 27-28).  Petitioner had a certification in

vocational silk screening, but did not have a GED, although he had

_____

    [2]    "New A.A. members proceed sequentially through its
'Twelve Steps' toward sobriety."  Cox v. Miller, 296 F.3d 89, 94
(2d Cir. 2002), cert. denied, 537 U.S. 1192 (2003) (footnote
omitted).  The fourth step counsels the participant to undertake
a "searching and fearless moral inventory."  Id. at 94 n.5.

    [3]    The eighth step requires the participant to make a list
of all persons he or she has harmed and to become willing to make
amends to those persons.  See Cox v. Miller, 296 F.3d at 94 n.5.



1  taken the GED examination three times (<u>id.</u>, p. 23).  Petitioner's work

2  ratings were average to exceptional (<u>id.</u>, pp. 23-24).  A 2006 chrono[4]

3  by a housing unit officer recorded that Petitioner was optimistic,

4  courteous, interacted well with inmates and staff, and consistently

5  received above average work reviews (<u>id.</u>, p. 24).

6

7       Petitioner had two disciplinary convictions, or "115's,[5] in 1989

8  and 1999, and six "128s,"[6] the last of which occurred in 1999 (<u>id.</u>,

9  p. 28).  None involved violence or weapons (<u>id.</u>).  A psychologist's

10 report diagnosed Petitioner as having "antisocial personality disorder

11 by history, greatly improved" (<u>id.</u>, p. 24).  The psychologist said it

12 appeared that in a controlled setting Petitioner's propensity for

13 violence was less than that of the average inmate, and within the

14 community would be no greater than that of the average citizen (<u>id.</u>,

15 pp. 26-27).

16

17      Petitioner submitted letters from his brothers indicating that,

18 upon release, Petitioner would have transportation and shelter (<u>id.</u>,

19 ─────────────────────

20      [4]   The California Department of Corrections and
   Rehabilitation uses "chronos" on Form 128-B to document
21 information concerning inmates and inmate behavior.  <u>See</u> Cal.
   Code Regs., tit. 15, § 3000.
22

23      [5]   The California Department of Corrections and
   Rehabilitation uses Form 115 to report prisoners' rules
24 violations that are believed to be violations of the law or that
   are not minor in nature.  <u>See</u> <u>Lira v. Herrera</u>, 427 F.3d 1164,
25 1167 n.4 (9th Cir. 2005), <u>cert. denied</u>, 127 S. Ct. 1212 (2007);
   Cal. Code Regs., tit. 15, § 3312(a)(3).
26

27      [6]   The California Department of Corrections and
   Rehabilitation uses counseling "chronos" on Form 128-A to
28 record instances of minor misconduct.  See Cal. Code Regs.,
   tit. 15, § 3312(a)(2).



1  pp. 31-32).  One brother indicated he could "guarantee" Petitioner a

2  job at that brother's place of employment, where the brother was a

3  supervisor, and the other brother said he would assist Petitioner in

4  getting a job at a CAL Trans job site (id., pp. 31-32).  Petitioner's

5  daughter wrote a supportive letter (id., pp. 32-33).

6

7      A deputy district attorney spoke, opposing parole (id., pp. 49-

8  50).  The deputy district attorney read into the record a transcript

9  of statements made by the victim's widow and daughter (id., pp. 40-

10 47).  Petitioner spoke, saying he took full responsibility for the

11 crime (id., pp. 47-48, 56-57).

12

13 II.  **The Board's Decision**

14

15     The Board denied parole for two years (Respondent's Lodgment 5,

16 pp. 58-63).  The Board stated that the commitment offense had been

17 carried out in an "especially callous manner," in that Petitioner

18 attacked multiple victims, killing one and paralyzing the other (id.,

19 p. 58).  The Board deemed the motive for the crime "very trivial in

20 relation to the offense" (id.).  The Board also based its decision on

21 an escalating pattern of criminal conduct and violence and on

22 Petitioner's failure to profit from society's previous attempts to

23 correct his criminality, including juvenile probation, county jail and

24 a CYA commitment (id., p. 59).

25

26     The Board also concluded that Petitioner had not participated

27 sufficiently in self-help programs, adding that the Board was not

28 convinced that Petitioner had 17 years' worth of experience or



8

1  understanding in AA and NA programs (id.).  The Board noted that

2  Petitioner had not demonstrated the knowledge that one would expect

3  from a person who allegedly had 17 years' experience in AA (id.,

4  p. 61).  The Board further observed that the psychologist's report was

5  "not totally supportive of release because it note[d] an improved

6  antisocial personality disorder" (id.).  The Board also indicated

7  that, "to be considered valid," job offers should be on company

8  letterhead, not someone's personal stationery (id., p. 62).  The Board

9  advised Petitioner to get his GED and a second vocation, to

10 participate in self-help programs, and to work toward a fuller

11 understanding of those self-help programs (id., p. 63).

### PETITIONER'S CONTENTIONS

Petitioner contends:

1.  The evidence allegedly was insufficient to support the
Board's decision (Petition, Ground One);

2.  The Board allegedly violated the Sixth Amendment by basing
its decision on facts not admitted by Petitioner or found by a jury
beyond a reasonable doubt, assertedly in violation of the principles
espoused in Cunningham v. California, 549 U.S. 270, 127 S. Ct. 856
(2007) (Petition, Ground Two).

### STANDARD OF REVIEW

A federal court may not grant an application for writ of habeas



1  corpus on behalf of a person in state custody with respect to any

2  claim that was adjudicated on the merits in state court proceedings

3  unless the adjudication of the claim: (1) "resulted in a decision that

4  was contrary to, or involved an unreasonable application of, clearly

5  established Federal law, as determined by the Supreme Court of the

6  United States"; or (2) "resulted in a decision that was based on an

7  unreasonable determination of the facts in light of the evidence

8  presented in the State court proceeding." 28 U.S.C. § 2254(d) (as

9  amended); see also Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002);

10  Early v. Packer, 537 U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S.

11  362, 405-09 (2000).

12

13       "Clearly established Federal law" refers to the governing legal

14  principle or principles set forth by the Supreme Court at the time the

15  state court renders its decision. Lockyer v. Andrade, 538 U.S. 63,

16  71-72 (2003). A state court's decision is "contrary to" clearly

17  established Federal law if: (1) it applies a rule that contradicts

18  governing Supreme Court law; or (2) it "confronts a set of facts . . .

19  materially indistinguishable" from a decision of the Supreme Court but

20  reaches a different result. See Early v. Packer, 537 U.S. at 8

21  (citation omitted); Williams v. Taylor, 529 U.S. at 405-06.

22

23       Under the "unreasonable application prong" of section 2254(d)(1),

24  a federal court may grant habeas relief "based on the application of a

25  governing legal principle to a set of facts different from those of

26  the case in which the principle was announced." Lockyer v. Andrade,

27  538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537

28  U.S. at 24-26 (state court decision "involves an unreasonable



10

1    application" of clearly established Federal law if it identifies the
2    correct governing Supreme Court law but unreasonably applies the law
3    to the facts).

4

5        A state court's decision "involves an unreasonable application of
6    [Supreme Court] precedent if the state court either unreasonably
7    extends a legal principle from [Supreme Court] precedent to a new
8    context where it should not apply, or unreasonably refuses to extend
9    that principle to a new context where it should apply." <u>Williams v.</u>
10   <u>Taylor</u>, 529 U.S. at 407 (citation omitted).

11

12       "In order for a federal court to find a state court's application
13   of [Supreme Court] precedent 'unreasonable,' the state court's
14   decision must have been more than incorrect or erroneous." <u>Wiggins v.</u>
15   <u>Smith</u>, 539 U.S. 510, 520 (2003) (citation omitted).  "The state
16   court's application must have been 'objectively unreasonable.'" <u>Id.</u>
17   at 520-21 (citation omitted); <u>see also</u> <u>Clark v. Murphy</u>, 331 F.3d 1062,
18   1068 (9th Cir.), <u>cert. denied</u>, 540 U.S. 968 (2003).

19

20       In applying these standards, this Court looks to the last
21   reasoned state court decision.  <u>See</u> <u>Franklin v. Johnson</u>, 290 F.3d
22   1223, 1233 n.3 (9th Cir. 2002).  Where no such reasoned opinion
23   exists, as where a state court rejected a claim in an unreasoned
24   order, this Court must conduct an independent review to determine
25   whether the decisions were contrary to, or involved an unreasonable
26   application of, "clearly established" Supreme Court precedent.  <u>See</u>
27   <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000).
28   ///



**DISCUSSION**

For the reasons discussed below, the Petition should be denied and dismissed on the merits with prejudice.

I.  **Governing Legal Standards**

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) ("Greenholtz").  In some instances, however, states may confer a liberty interest in parole under state law. Id. at 12.  Section 3041(b) of the California Penal Code provides, in pertinent part:

> The panel or the board . . . shall set a release date unless
> it determines that the gravity of the current convicted
> offense or offenses, or the timing and gravity of current or
> past convicted offense or offenses, is such that
> consideration of the public safety requires a more lengthy
> period of incarceration for this individual, and that a
> parole date, therefore, cannot be fixed at this meeting.

The Ninth Circuit has held that section 3041(b) confers a constitutionally protected liberty interest in parole. Hayward v. Marshall, 512 F.3d 536, 542 (9th Cir. 2008) ("Hayward"); Irons v. Carey, 505 F.3d 846, 850-51 (9th Cir. 2007) ("Irons"); Sass v. Calif. Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006) ("Sass");

12



1 | <u>Biggs v. Terhune</u>, 334 F.3d 910, 914-15 (9th Cir. 2003) ("<u>Biggs</u>");

2 | <u>McQuillion v. Duncan</u>, 306 F.3d 895, 904 (9th Cir. 2002).[7]

3 |

4 |     Due Process requires that there exist "some evidence" to support

5 | a parole decision.  <u>Hayward</u>, 512 F.3d at 542; <u>Irons</u>, 505 F.3d at 851

6 | ("At the time that Irons' state habeas petition [challenging a 2001

7 | denial of parole] was before the state courts, the Supreme Court had

8 | clearly established that a parole board's decision deprives a prisoner

9 | of due process . . . if the board's decision is not supported by 'some

10 | evidence in the record.'"); <u>Sass</u>, 461 F.3d at 1128-29 ("some evidence"

11 | standard is "clearly established in the parole context"); <u>Powell v.</u>

12 | <u>Gomez</u>, 33 F.3d 39, 40 (9th Cir. 1994); <u>Perveler v. Estelle</u>, 974 F.2d

13 | 1132, 1134 (9th Cir. 1992); <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d

14 | 1389, 1390 (9th Cir. 1987) (citing <u>Superintendent, Massachusetts</u>

15 | <u>Correctional Institution, Walpole v. Hill</u>, 472 U.S. 445, 455 (1985)).

16 | "To determine whether the some evidence standard is met 'does not

17 | require examination of the entire record, independent assessment of

18 | the credibility of witnesses, or weighing of the evidence.'"   <u>Sass</u>,

19 |

20 |        [7]    Although Respondent argues to the contrary, this Court

21 | has no authority to disregard the Ninth Circuit's clear holdings,
in <u>Biggs</u>, <u>Sass</u>, <u>Irons</u> and <u>Hayward</u>, that an inmate has a liberty

22 | interest in parole.  <u>See Hart v. Massanari</u>, 266 F.3d 1155, 1170
(9th Cir. 2001) (district judge may not "disagree with his

23 | learned colleagues on his own court of appeals who have ruled on
a controlling legal issue"); <u>Zuniga v. United Can Co.</u>, 812 F.2d

24 | 443, 450 (9th Cir. 1987) ("[d]istrict courts are, of course,
bound by the law of their own circuit").  The Ninth Circuit

25 | recently has deemed "foreclosed" any argument to the contrary.

26 | <u>See Washington v. Marshall</u>, 2008 WL 925554, at *1 (9th Cir.
Apr. 7, 2008); <u>Chan v. Kane</u>, 2008 WL 925552, at *1 (9th Cir.

27 | Apr. 7, 2008).  The Court may cite unpublished Ninth Circuit
opinions issued on or after January 1, 2007.  <u>See</u> U.S. Ct. App.

28 | 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).



1  461 F.3d at 1128 (quoting <u>Superintendent, Massachusetts Correctional</u>

2  <u>Institution, Walpole v. Hill</u>, 472 U.S. at 455-56).  The "some

3  evidence" standard is "minimal," and "'the relevant question is

4  whether there is <u>any</u> evidence in the record that could support the

5  conclusion reached by the [Board].'"  <u>Sass</u>, 461 F.3d at 1128 (quoting

6  <u>Superintendent, Massachusetts Correctional Institution, Walpole v.</u>

7  <u>Hill</u>, 472 U.S. at 455-56; emphasis added).[8]

8

9      State authorities' discretion in parole matters is "great" and

10  "involves the deliberate assessment of a wide variety of

11  individualized factors on a case-by-case basis, and the striking of a

12  balance between the interests of the inmate and the public."  <u>In re</u>

13  <u>Powell</u>, 45 Cal. 3d 894, 902, 248 Cal. Rptr. 431, 755 P.2d 881 (1988)

14  (internal quotations and citation omitted); <u>see also</u> <u>Biggs</u>, 334 F.3d

15  at 915 (California law allows the state authorities "to consider a

16  myriad of factors when weighing the decision of granting or denying

17  parole"); <u>Glauner v. Miller</u>, 184 F.3d 1053, 1055 (9th Cir. 1999)

18  (state authorities have "broad discretion" to determine whether "the

19  necessary [statutory] prerequisites are met") (quoting <u>Board of</u>

20  <u>Pardons v. Allen</u>, 482 U.S. 369, 376 (1987)).

21  _____

22      [8]    Respondent's contention that the "some evidence"
    standard does not apply is without merit.  <u>See</u> <u>Irons</u>, 505 F.3d at
23  851; <u>Sass</u>, 461 F.3d at 1128.  <u>Carey v. Musladin</u>, 127 S. Ct. 649
    (2006), cited by Respondent, does not "undercut the theory or
24  reasoning underlying the prior circuit precedent in such a way
    that the cases are clearly irreconcilable."  <u>See</u> <u>Washington v.</u>
25  <u>Marshall</u>, 2008 WL 925554, at *1 (argument that "some evidence"
    standard did not apply to parole decisions "foreclosed" by
26  <u>McQuillion v. Duncan</u>, <u>supra</u>); <u>Chan v. Kane</u>, 2008 WL 925552, at *1
27  (deeming argument that "some evidence" standard did not apply to
    parole decisions "foreclosed" by <u>Biggs</u>); <u>see generally</u> <u>Miller v.</u>
28  <u>Gammie</u>, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

1     As indicated above, California Penal Code section 3041(b)

2  provides that the Board "shall set a release date unless it determines

3  that the gravity of the current convicted offense or offenses, or the

4  timing and gravity of current or past convicted offense or offenses,

5  is such that consideration of the public safety requires a more

6  lengthy period of incarceration for this individual, and that a parole

7  date, therefore, cannot be fixed at this meeting."   Cal. Penal Code §

8  3041(b).   Thus, a finding of parole suitability must precede the

9  setting of a parole release date for a life prisoner.   See In re

10  Stanworth, 33 Cal. 3d 176, 183, 187 Cal. Rptr. 783, 654 P.2d 1311

11  (1982).

12

13     Under applicable state regulations, "a life prisoner shall be

14  found unsuitable for and denied parole if in the judgment of the

15  [Board] the prisoner will pose an unreasonable risk of danger to

16  society if released from prison."   Cal. Code Regs., tit. 15,

17  § 2402(a).   In determining suitability for parole, the Board may

18  consider, inter alia, "the circumstances of the prisoner's social

19  history; past and present mental state; past criminal history,

20  including involvement in other criminal misconduct which is reliably

21  documented; the base and other commitment offenses, including behavior

22  before, during and after the crime; past and present attitude toward

23  the crime; any conditions of treatment or control, including the use

24  of special conditions under which the prisoner may safely be released

25  to the community; and any other information which bears on the

26  prisoner's suitability for release."   See Cal. Code Regs., tit. 15,

27  § 2402(b).

28  ///

15

1    The regulations describe certain circumstances tending to show

2 unsuitability for release, set forth as "general guidelines," but the

3 importance of any circumstances or combination of circumstances in a

4 particular case is left to the judgment of the Board.   Cal. Code

5 Regs., tit. 15, § 2402(c).   The applicable regulation provides:

6

7    Circumstances tending to show unsuitability include:

8

9  (1)   Commitment Offense.   The prisoner committed the offense

10  in an especially heinous, atrocious or cruel manner.   The factors

11  to be considered include:

12

13    (A)   Multiple victims were attacked, injured or killed

14    in the same or separate incidents.

15

16    (B)   The offense was carried out in a dispassionate and

17    calculated manner, such as an execution-style murder.

18

19    (C)   The victim was abused, defiled or mutilated during

20    or after the offense.

21

22    (D)   The offense was carried out in a manner which

23    demonstrates an exceptionally callous disregard for human

24    suffering.

25

26    (E)   The motive for the crime is inexplicable or very

27    trivial in relation to the offense.

28



1        (2)   Previous Record of Violence.   The prisoner on previous

2    occasions inflicted or attempted to inflict serious injury on a

3    victim, particularly if the prisoner demonstrated serious

4    assaultive behavior at an early age.

5

6        (3)   Unstable Social History.   The prisoner has a history of

7    unstable or tumultuous relationships with others.

8

9        (4)   Sadistic Sexual Offenses.   The prisoner has previously

10    sexually assaulted another in a manner calculated to inflict

11    unusual pain or fear upon the victim.

12

13        (5)   Psychological Factors.   The prisoner has a lengthy

14    history of severe mental problems related to the offense.

15

16        (6)   Institutional Behavior.   The prisoner has engaged in

17    serious misconduct in prison or jail.

18

19  Cal. Code Regs., tit. 15, § 2402(c)

20

21      Circumstances tending to show suitability for parole include:

22  (1) the absence of a juvenile record; (2) a stable social history;

23  (3) signs of remorse; (4) a lack of any significant history of violent

24  crime; (5) the prisoner's age; (6) realistic parole plans; and

25  (7) institutional activities indicating an enhanced ability to

26  function within the law upon release.   Cal. Code Regs., tit. 15,

27  § 2402(d).

28  ///

1    Upon a finding of suitability, the Board sets a "base term"

2  established solely on the gravity of the base crime, using a matrix of

3  base terms set forth in section 2403 of the California Code of

4  Regulations.  <u>See</u> Cal. Code Regs., tit. 15, § 2403(a).

5

6  **II.   <u>Petitioner's Challenge to the Sufficiency of the Evidence Does</u>**

7  **<u>Not Merit Habeas Relief.</u>**

8

9    Petitioner challenges the sufficiency of the evidence to support

10  the denial of parole (Petition, Ground One, Pet. Mem., pp. 1-3).

11  According to the Superior Court, the Board properly determined that

12  the gravity of the commitment offense was such that consideration of

13  public safety required a more lengthy period of incarceration

14  (Respondent's Lodgment 7, p. 4).  The Superior Court also determined

15  that, in light of Petitioner's escalating pattern of criminal conduct,

16  Petitioner's insufficient self-help, and the psychological report

17  indicating an "improved antisocial personality disorder," the Board

18  did not act without a factual basis (<u>id.</u>).

19

20    In applying the "some evidence" test, the issue is not whether

21  the evidence supported any particular factor regarding parole

22  suitability, but rather whether some evidence indicates that the

23  prisoner's release unreasonably would endanger public safety.  <u>See</u>

24  <u>Hayward</u>, 512 F.3d at 543.  The evidence before the Board amply

25  supported the Board's decision.  This evidence included: (1) the

26  callous nature of the commitment offense, in which Petitioner invaded

27  a home, shot a defenseless homeowner to death, and shot and paralyzed

28  a three-year-old child; (2) the relative triviality of the motive (an



1  attempt to obtain gas money); (3) Petitioner's escalating pattern of

2  criminal conduct, from burglary to robbery to murder; (4) Petitioner's

3  insufficient participation in self-help programs, as evidenced by his

4  relative ignorance of the steps in the AA program; and (5) the

5  psychologist's report which, while stating that Petitioner's risk of

6  danger allegedly was no higher than that of the average person in the

7  community, also indicated that Petitioner still had an antisocial

8  personality disorder (albeit "greatly improved"). See Chan v. Kane,

9  2008 WL 925552, at *1 (9th Cir. Apr. 7, 2008) (commitment offense,

10  failure to participate adequately in self-help and insufficient parole

11  plans sufficient to support denial of parole); Rose v. Kane, 2008 WL

12  740311, at *1 (9th Cir. Mar. 18, 2008) (commitment offense, inmate's

13  lack of insight and demeanor at hearing sufficient); Lewis v. Calif.

14  Bd. of Prison Terms, 2008 WL 186871 (9th Cir., Jan 18, 2008)

15  (affirming denial of parole based on petitioner's criminal history,

16  failure to pursue vocational training and self-help programs, and

17  prison disciplinary record); Wauls v. Muntz, 2007 WL 4165239, at *1

18  (9th Cir. Nov. 26, 2007) (nature of commitment offense, criminal

19  history, and disciplinary history sufficient); Jackson v. Carey, 2007

20  WL 2088279, at *1 (9th Cir. July 19, 2007) (gravity of commitment

21  offense, inadequate parole plans and failure to participate adequately

22  in self-help programs sufficient); Rosas v. Nielsen, 428 F.3d 1229,

23  1232-33 (9th Cir. 2005) (circumstances of commitment offense along

24  with psychiatric reports showing petitioner had failed to complete

25  necessary programming while in prison sufficient); Burnight v. Carey,

26  2007 WL 3231583, at *3 & n.1 (E.D. Cal. Oct. 30, 2007), adopted, 2008

27  WL 275694 (E.D. Cal. Jan. 31, 2008) (nature of commitment offense and

28  triviality of motive sufficient); Martinez v. Kane, 2007 WL 2729799,



1   at *6 (N.D. Cal. Sept. 18, 2007) (nature of commitment offense,

2   escalating pattern of criminal activity, counselor's and

3   psychologist's reports, and inadequate self-help as evidenced in part

4   by petitioner's lack of knowledge of the twelve steps despite his

5   purported participation in several twelve-step programs sufficient);

6   Cosio v. Kane, 2007 WL 518599, at **4-5 (N.D. Cal. Feb. 12, 2007)

7   (commitment offense, escalating pattern of criminal conduct,

8   "inconclusive" psychologist's report, and inadequate advancement in

9   AA/NA programs as evidenced by petitioner's completion only of three

10  of the twelve steps in over 15 years sufficient).

11

12      Petitioner argues that the Board should have weighed more heavily

13  arguably positive factors (Pet. Mem., pp. 1-3).  This Court cannot

14  re-weigh the factors supporting parole suitability and the factors

15  supporting parole unsuitability.  See Crawley v. Knowles, 235 Fed.

16  App'x 563, 564 (9th Cir. 2007) ("The 'some evidence' standard does not

17  allow us to entertain Crawley's contentions regarding how the Board

18  evaluated the evidence it had before it when it made its suitability

19  determination. [citation]".); Chichil v. Kane, 255 Fed. App'x 194, 194

20  (9th Cir. 2007) ("the 'some evidence' standard does not allow us to

21  reweigh the evidence before the Board"); Powell v. Gomez, 33 F.3d at

22  42; Countryman v. Stokes, 2008 WL 1335934, at *11 (C.D. Cal. Apr. 8,

23  2008); Collier v. Dexter, 2008 WL 816688, at *12 (C.D. Cal. Mar. 25,

24  2008).

25

26      Moreover, even if the Board made some insupportable findings, the

27  Court nevertheless must deny habeas relief where, as here, there

28  exists "some evidence" supporting the Board's findings of



1  unsuitability.  See Biggs, 334 F.3d at 916.[9]

2

3       Petitioner appears to argue the Board erred by continuing to rely

4  on immutable factors, citing, inter alia, Biggs (Traverse, pp. 5-7).

5  In dicta, the Biggs Court stated:

6

7       Over time, however, should Biggs continue to demonstrate

8       exemplary behavior and evidence of rehabilitation, denying

9       him a parole date simply because of the nature of Biggs'

10      offense and prior conduct would raise serious questions

11      involving his liberty interest in parole. . . .

12

13          . . .  A continued reliance in the future on an

14      unchanging factor, the circumstance of the offense and

15      conduct prior to imprisonment, runs contrary to the

16      rehabilitative goals espoused by the prison system and could

17      result in a due process violation.

18

19  Biggs, 334 F.3d at 916-17 (emphasis added).

20

21      As previously indicated, the Board did not rely solely on the

22  nature of the commitment offense to deny parole in the present case.

23  Therefore, the Biggs dicta would be inapplicable even if it were

24  otherwise persuasive or authoritative.  See Withers v. Finn, 2007 WL

25  2729078, at *6 (distinguishing Biggs where denial of parole was based

26  _____

27      [9]   To the extent Petitioner contends the Board violated
    state law or regulations, Petitioner is not entitled to habeas
28  relief.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

21



1 | in part on petitioner's inadequate parole plans, and thus was not

2 | based "*solely* on immutable factors"; original emphasis); Rose v. Kane,

3 | 2006 WL 3251735, at *11 (N.D. Cal. Nov. 2, 2006), aff'd, 2008 WL

4 | 740311 (9th Cir. Mar. 18, 2008) (Biggs dicta inapplicable where the

5 | Board did not base denial solely on gravity of commitment offense, but

6 | also relied on fact that petitioner needed more self-help and

7 | therapy).

8 |

9 |     Moreover, an analysis of Ninth Circuit cases subsequent to Biggs

10 | demonstrates that Petitioner's circumstances cannot justify habeas

11 | relief under the Biggs dicta.  In Sass, the Ninth Circuit held that

12 | the gravity of the commitment offense (second degree murder) and the

13 | evidence of Sass' prior offenses demonstrated the requisite "some

14 | evidence" to support the Board's denial of parole.  Sass, 461 F.3d at

15 | 1129.  Acknowledging the Biggs dicta, the Sass Court indicated

16 | nevertheless that it was not the Court's function "to speculate about

17 | how future parole hearings should proceed."  Id.

18 |

19 |     In Irons, the Board deemed the petitioner, a second degree

20 | murderer, unsuitable for parole despite his exemplary behavior in

21 | prison.  On federal habeas, Irons argued, inter alia, that under the

22 | Biggs dicta the Board had violated Due Process by relying repeatedly

23 | on the nature of the commitment offense to deny parole.  Relying on

24 | Sass, the Ninth Circuit rejected this argument.  Irons, 505 F.3d at

25 | 853-54.  The Court observed, inter alia, that the crime in Sass was

26 | less callous than that in Irons, and that the petitioners in Biggs,

27 | Sass and Irons had not served the minimum term to which they had been

28 | sentenced at the time of the Board's denial of parole.  Id.  However,

22



1  the Court carefully limited its holding to the "particular

2  circumstances" of the offenses in Biggs, Sass and Irons.  Id.  ("All

3  we held in [Biggs and Sass], and all we hold today, . . . is that,

4  given the particular circumstances of the offenses in these cases, due

5  process was not violated when these prisoners were deemed unsuitable

6  for parole prior to the expiration of their minimum terms."); see

7  Biggs v. Schwarzenegger, 2007 WL 1140721, at *3 n.2 (E.D. Cal.

8  Apr. 17, 2007) ("Irons did not decide that reliance on unchanging

9  factors after the minimum term had been served was unlawful.  We

10 simply know that 'maybe' that will be the case."); see also Pulido v.

11 Salazar, 2008 WL 906543, at *6 (C.D. Cal. Mar. 31, 2008) (same).

12

13     The day after the original Ninth Circuit decision in Irons,[10] the

14 Circuit reversed a district court's grant of parole eligibility in

15 Kunkler v. Muntz, 226 Fed. App'x 669 (9th Cir. 2007).  In that case,

16 after the Board granted parole at the petitioner's eighth parole

17 hearing, the Governor reversed the decision, citing the gravity of the

18 commitment offense and the petitioner's criminal history.  Id. at *1.

19 The Superior Court held the Board could not rely on the petitioner's

20 criminal history to deny parole because there was no evidence that any

21 of the petitioner's prior crimes involved violence.  Id.  On federal

22 habeas review, the district court granted the petition, applying the

23 Biggs dicta.  The Ninth Circuit reversed, holding that there was some

24 evidence to support the Board's decision, and quoting Sass' admonition

25

26 ───────────

27     [10]    The original Irons opinion, later amended in respects
   immaterial to the present proceeding, was filed on March 6, 2007.
   See Irons v. Carey, 479 F.3d 658 (9th Cir. 2007), amended, 505
28 F.3d 846 (July 13, 2007) .



1 that "'it is not [this court's] function to speculate about how future

2 parole hearings could proceed.'"  Id. at *2 (citation omitted;

3 original brackets).

4

5     In Hayward, the Ninth Circuit cited the Biggs dicta and granted

6 habeas relief to a sixty-four-year-old state prisoner who had been

7 incarcerated almost thirty years for second degree murder.  Hayward,

8 512 F.3d at 545-48.  In doing so, however, the Hayward Court expressly

9 confined its ruling to the "unusual" and "extraordinary" circumstances

10 of that case.  Id. at 546.  Those circumstances, emphasized repeatedly

11 by the Hayward Court, included not only Hayward's age and the

12 remoteness of his crime, but also the significant provocation for the

13 crime (the victim had attacked Hayward's girlfriend) and the Board of

14 Prison Terms' successive, favorable discretionary decisions (the Board

15 twice had found Hayward suitable for parole).  Id. at 544-47.  No such

16 "unusual" or "extraordinary" circumstances attend the present case.

17 The Board has never found Petitioner suitable for parole.  There was

18 no provocation for Petitioner's killing of one victim or for

19 Petitioner's paralyzing of another.

20

21     Nothing in Sass, Irons, Kunkler or Hayward alters this Court's

22 conclusion that a grant of habeas relief to Petitioner under the Biggs

23 dicta is not supported, much less compelled, by any "clearly

24

25

26

27

28



1  established" Supreme Court law.[11]   Section 2254(d)(1)'s reference to

2  "clearly established federal law" "refers to holdings, as opposed to

3  the dicta, of [Supreme Court] decisions." Williams v. Taylor, 529

4  U.S. 362, 365 (2000).   The statements from Biggs quoted above are the

5  dicta of a Court of Appeals, not the Supreme Court.   Indeed, in

6  Culverson v. Davison, 2007 WL 1663682 (9th Cir. June 8, 2007), the

7  Ninth Circuit expressly ruled that "[t]here is no 'clearly established

8  federal law as determined by the Supreme Court of the United States'

9  that limits the number of times a parole board may deny parole to a

10  murderer based on the brutality and viciousness of the commitment

11  offense." Id. at *1 (footnotes omitted).   The Court ruled that "[t]he

12  *dicta* in Ninth Circuit cases like [Biggs] are not holdings of the

13  Supreme Court, as required by Carey v. Musladin, 549 U.S. ____, at

14  *5-7 [127 S. Ct. 649] (2006), and Shriro [sic] v. Landrigan, ___ U.S.

15  ___, 2007 WL 1387923, at *8-9 (May 14, 2007) [127 S. Ct. 1933

16  (2007)]." Id.; see also Pulido v. Salazar, 2008 WL 906543, at *7

17  (Biggs dicta not clearly established Supreme Court law); Fernandez v.

18  Kane, 2006 WL 3041083, at *3 (N.D. Cal. Oct. 24, 2006) (same).

19  ///

20  ///

21

22  _____

23  [11]    One might conclude from Sass, Irons, Kunkler and
Hayward that, except with respect to the extraordinary
24  circumstances found in Hayward, there does not exist any clearly
established Ninth Circuit law in this area (much less any clearly
25  established Supreme Court law).   See Biggs v. Schwarzenegger,
2007 WL 1140721, at **3-4 (discussing lack of guiding standards
26  in Sass and Irons); see also Kleve v. Kane, 2007 WL 879069, at
*6 (N.D. Cal. Mar. 21, 2007) (noting that the Ninth Circuit has
27  not specified the number of denials or the length of time served
beyond the minimum sentence that might trigger a Due Process
28  violation).



1    In sum, the state courts' rejection of Petitioner's claim that

2   the evidence was insufficient to support the Board's decision was not

3   contrary to, or an unreasonable application of, any clearly

4   established Federal law as determined by the United States Supreme

5   Court.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled to habeas

6   relief on his challenge to the sufficiency of the evidence.

7

8   **III.  <u>The Board Did Not Violate the Sixth Amendment in Deeming</u>**

9       **<u>Petitioner Unsuitable for Parole.</u>**

10

11   In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) ("<u>Apprendi</u>"), the

12   United States Supreme Court held that, regardless of its label as a

13   "sentencing factor," any fact other than the fact of a prior

14   conviction that increases the penalty for a crime beyond the

15   prescribed statutory maximum among other things must be "proved beyond

16   a reasonable doubt."  <u>Id.</u> at 490.  In <u>Blakely v. Washington</u>, 542 U.S.

17   296 (2004) ("<u>Blakely</u>"), the Supreme Court held that the "statutory

18   maximum" for <u>Apprendi</u> purposes "is the maximum sentence a judge may

19   impose *solely on the basis of the facts reflected in the jury verdict*

20   *or admitted by the defendant . . . .*"  <u>Blakely</u>, 542 U.S. at 303

21   (original emphasis).  In <u>Cunningham v. California</u>, 549 U.S. 270, 127

22   S. Ct. 856 (2007) ("<u>Cunningham</u>"), the Supreme Court held that a

23   California judge's imposition of an upper term sentence based on facts

24   found by the judge rather than the jury violated the Constitution.

25   <u>Cunningham</u>, 127 S. Ct. at 871.

26

27   Petitioner contends that the Board violated <u>Cunningham</u> by using

28   facts not found by the jury assertedly to "aggravate" Petitioner's



1  sentence (Pet. Mem., pp. 4-6); Traverse, pp. 7-9).  This contention

2  fails for several reasons.

3

4      First, the rule set forth in Apprendi, Blakely and Cunningham,

5  requiring a jury determination of facts increasing a sentence beyond

6  the statutory maximum, is based on the Sixth Amendment's jury trial

7  guarantee and the requirement of proof beyond a reasonable doubt

8  contained in the Due Process Clause.  See Apprendi, 530 U.S. at 476-

9  77; see also Cunningham, 127 S. Ct. at 863-64 (2007); Shepard v.

10 United States, 544 U.S. 13, 24 (2005); Blakely v. Washington, 542 U.S.

11 296, 305 (2004).  At his parole hearing, Petitioner enjoyed no

12 constitutional right to jury trial or to proof beyond a reasonable

13 doubt.  See United States v. Knights, 534 U.S. 112, 120 (2001) ("trial

14 rights to a jury and proof beyond a reasonable doubt" inapplicable in

15 probation revocation proceedings); United States v. Huerta-Pimentel,

16 445 F.3d 1220, 1225 (9th Cir.), cert. denied, 127 S. Ct. 545 (2006)

17 ("Nor does a judge's finding, by a preponderance of the evidence, that

18 defendant violated the conditions of supervised release raise Sixth

19 Amendment concerns.  There is no right to jury trial in such post-

20 conviction determinations. [citations].");  Rush v. Kane, 2007 WL

21 4166032, at *7 (N.D. Cal. Nov. 18, 2007) (no Supreme Court law clearly

22 establishes applicability of Apprendi and its progeny to parole

23 suitability determinations).

24

25     Second, the Blakely Court explained that the Apprendi rationale

26 does not apply to indeterminate sentencing within the sentence range

27 permitted by the jury's verdict.  See Blakely, 542 U.S. at 309 ("Of

28 course indeterminate schemes involve judicial factfinding, in that a



1 judge (like a parole board) may implicitly rule on those facts he

2 deems important to the exercise of his sentencing discretion.  But the

3 facts do not pertain to whether the defendant has a legal *right* to a

4 lesser sentence - and that makes all the difference insofar as

5 judicial impingement upon the traditional role of the jury is

6 concerned.") (original emphasis); <u>Rush v. Kane</u>, 2007 4166032, at *7.

7

8       Third, the <u>Apprendi</u> line of cases is inapplicable here because,

9 in denying parole, the Board did not increase Petitioner's sentence

10 beyond the statutory maximum.  The sentencing court imposed a life

11 term, the maximum for Petitioner's offense.  <u>See</u> Cal. Penal Code §§

12 187, 190(a).[12]  The Board did not use any fact to enhance Petitioner's

13 sentence beyond that statutory maximum.  Hence, <u>Apprendi</u>, <u>Blakely</u> and

14 <u>Cunningham</u> do not apply here.  <u>See</u> <u>Duesler v. Woodford</u>, 2008 WL

15 681060, at *1 (9th Cir. Mar. 10, 2008) (Board's denial of parole did

16

17 ─────────────

18     [12]    The probation report states that the jury found true
the allegation that the murder was committed during the
commission or attempted commission of a burglary (Respondent's
19 Lodgment 3), pp. 1, 3).  Prior to Petitioner's crime, California
Penal Code section 190.2 authorized a sentence of death or life
20 in prison upon a finding of the special circumstance that the
murder had been committed during the commission of a burglary
21 with intent to commit larceny.  However, in 1976, the California
22 Supreme Court ruled the statute unconstitutional in <u>Rockwell v.</u>
<u>Superior Court of Ventura County</u>, 18 Cal. 3d 420, 134 Cal. Rptr.
23 650, 556 P.2d 1101 (1976).  The California Legislature did not
enact new death penalty legislation until August of 1977, after
24 Petitioner committed his offense.  <u>See</u> <u>People v. Teron</u>, 23 Cal.
25 3d 103, 116, 151 Cal. Rptr. 633, 588 P.2d 773 (1979), <u>disapproved</u>
<u>on other grounds</u>, <u>People v. Chadd</u>, 28 Cal. 3d 739, 750 n.7, 170
26 Cal. Rptr. 798, 621 P.2d 837 (1981), <u>cert. denied</u>, 452 U.S. 931
(1981) (holding 1977 statute did not apply to offense committed
27 before its enactment).  Therefore, at the time of Petitioner's
28 crime in May of 1977, the maximum sentence for the offense was
life.



1  not violate <u>Apprendi</u> and <u>Blakely</u> "because the Board did not increase

2  Duesler's sentence beyond the statutory maximum of life imprisonment

3  for his crime of second degree murder"); <u>Cabales v. Ayers</u>, 2007 WL

4  1593869, at *7 (N.D. Cal. June 1, 2007) ("Cabales' sentence is 15-to-

5  life, and the [Board] has not used the fact that he shot at and hit

6  several people to extend his sentence beyond the life maximum to which

7  he was sentenced.  <u>Apprendi</u> is not implicated by the [Board's] use of

8  the information about the particulars of the crime."); <u>Clifford v.</u>

9  <u>Kane</u>, 2007 WL 1031148, at *7 (N.D. Cal. Apr. 3, 2007) ("No case in the

10  <u>Apprendi</u> line has considered the requirements for parole

11  determinations.  Therefore, petitioner's proposed application of

12  <u>Apprendi</u> and its progeny to parole hearings is not 'clearly

13  established Federal law, as determined by the Supreme Court of the

14  United States' and thus cannot be a basis to grant him habeas

15  relief.") (citation omitted); <u>Jameson v. Woodford</u>, 2007 WL 963275, at

16  *10 (E.D. Cal., Mar. 29, 2007), <u>adopted</u>, 2007 WL 1574580 (E.D. Cal.

17  May 30, 2007) (<u>Apprendi</u> and <u>Blakely</u> inapplicable, because "[t]he

18  parole board's decision did not increase Petitioner's sentence beyond

19  the maximum").

20

21     In sum, the state courts' rejection of this claim was not

22  contrary to, or an objectively unreasonable application of, any

23  clearly established Federal law as determined by the United States

24  Supreme Court.  <u>See</u> 28 U.S.C. § 2254(d).  Petitioner is not entitled

25  to habeas relief on this claim.

26  ///

27  ///

28  ///



29

**RECOMMENDATION**

    For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) denying and dismissing the Petition with prejudice.

       DATED:  April 23, 2008.

                            /s/

                           CHARLES F. EICK
                UNITED STATES MAGISTRATE JUDGE



**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.